## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

July 18, 2019

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 17-14575-EE
Case Style: Thomas Brennan v. Kim Thomas, et al
District Court Docket No: 2:14-cv-01021-TFM

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Elora Jackson, EE at (404) 335-6173.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6151

OPIN-1 Ntc of Issuance of Opinion

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-14575
Non-Argument Calendar

_____

D.C. Docket No. 2:14-cv-01021-TFM


THOMAS G. BRENNAN,

                                              Plaintiff-Appellant,

versus

KIM TOBIAS THOMAS,
individually and in official capacity,
Commissioner of Alabama Department of Corrections,
RUTH NAGLISH,
individually and in official capacity,
Deputy Commissioner of Health Services for the Alabama Department of Corrections,
LOUIS BOYD,
individually and in official capacity,
Warden at Draper Correctional Facility,
PHYLLIS BILLUPS,
individually and in official capacity,
Deputy Warden at Draper Correctional Facility for the Alabama Department of Corrections,
LARRY PHILYAWL,
individually and in official capacity,
an officer (Lt.) at Draper Correctional Facility for the Alabama Department of Corrections,

WILLY JACKSON, individually and in official capacity, Chief Steward at Draper Correctonal Facility for the Alabama Department of Corrections, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(July 18, 2019)

Before MARTIN, NEWSOM, and GRANT, Circuit Judges.

PER CURIAM:

Thomas Brennan, an Alabama prisoner proceeding *pro se*, brought 42 U.S.C. § 1983 and Americans with Disabilities Act claims against various state prison officials and medical providers.[1]  The magistrate judge[2] granted summary judgment to the defendants, and Brennan appeals.

I.

Brennan slipped and fell on a wax concrete floor at St. Clair prison in Alabama, rupturing several discs in his neck and lower spine.  He was referred to a

---

[1] Brennan also briefly raised a retaliatory transfer claim after he was transferred to Bullock Correctional Center.  He abandoned the claim, however, by not including it when the magistrate judge asked him to clarify the claims on which he wished to proceed.  We decline to consider the claim in the first instance on appeal.  *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004).

[2] The parties consented to magistrate judge authority over all proceedings below, including the entry of final judgment, under 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.

2

neurosurgeon, who performed surgery on Brennan's neck in September 2011 and prescribed Vicodin for postsurgical pain. The prison physician at St. Clair continued to prescribe narcotic pain medications for chronic pain related to Brennan's back injuries and a preexisting leg-length discrepancy and scoliosis. By the time Brennan was transferred to Draper Correctional Facility in June 2012, he had been taking strong narcotic pain medications for several months.

As soon as he arrived at Draper, Brennan submitted requests for medical treatment to have his pain medication renewed. At that time, Alabama contracted with a private company, Corizon, LLC, to provide medical services for inmates housed at Draper prison. Dyjerlynn Lampley-Copeland, a physician employed by Corizon, evaluated Brennan three days after his prescriptions from St. Clair had run out. Brennan told Dr. Lampley-Copeland that he was having pain and withdrawal symptoms, including hot and cold flashes, nausea, diarrhea, constipation, and sleeplessness, and asked her to prescribe narcotics. According to Brennan, Dr. Lampley-Copeland reviewed his chart and told him that there was "nothing wrong with him but chronic pain syndrome," which Brennan understood to mean that his pain was imaginary. She told him that the previous physician should not have "caved in" and prescribed narcotics, and that she would have to think about what to prescribe for him.

Nine days later, Dr. Lampley-Copeland prescribed a 30-day course of Ultram, an opioid narcotic medication that is less potent than the one that had been prescribed for Brennan at St. Clair. When the prescription for Ultram ran out, Dr. Lampley-Copeland refused to prescribe anything more than Tylenol and a muscle relaxant for Brennan's chronic pain, despite his complaints that only strong narcotics provided adequate pain relief.

Brennan was also given several medical "special needs profiles," which allowed him the use of assistive equipment (including a walking cane and orthopedic shoes), a bottom-bunk assignment, and activity restrictions prohibiting heavy lifting or prolonged standing. With those profiles, prison officials assigned him to work in the kitchen. For his first several months at Draper, however, the kitchen stewards allowed Brennan to sleep in instead of working. In the meantime, Brennan asked for a "no work" profile so that he could be medically excused from doing work of any kind. Prison officials and medical providers refused to give him one.

According to Brennan, on two occasions, corrections officers insisted that he show up for kitchen duty and wipe tables in the dining room. After he complained that wiping tables caused him pain, prison medical providers gave him a "no stooping, no bending" profile, and he was excused from kitchen duty from then on.

4

In late 2012, at Brennan's request, his job assignment was changed from kitchen duty to dorm cleaner. The work of a dorm cleaner included sweeping and mopping, which aggravated Brennan's back pain. When Brennan told one of the prison physicians that sweeping and mopping was painful, the physician gave him a "no sweeping, no mopping" profile. By all accounts, prison officials honored that restriction and Brennan was allowed to skip that part of the job once he received the profile.

Brennan filed a complaint seeking money damages pursuant to 42 U.S.C. § 1983, claiming that the defendants had violated his Eighth and Fourteenth Amendment rights by cutting off his narcotic pain medication "cold turkey" and refusing to give him narcotics thereafter. He also claimed that the defendants forced him to work beyond his physical capabilities, in violation of the Eighth and Fourteenth Amendments and Title II of the Americans with Disabilities Act ("ADA"). The magistrate judge granted the defendants' motions for summary judgment on all of Brennan's claims, and this appeal followed.

Although Brennan named 12 individual defendants in his complaint, his arguments on appeal relate to only five of them: Corizon, LLC; Rich Hallworth, the former Chief Executive Officer of Corizon; Stuart Campbell, Corizon's former President; Dr. Lampley-Copeland; and Michele Sagers-Copeland, the Corizon Health Services Administrator at the facility where Brennan was treated. He has

therefore abandoned his claims against the remaining defendants.³ *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009); *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008).

## II.

Along with his appeal of the final judgment, Brennan challenges the magistrate judge's interlocutory orders denying three of his motions: (1) a motion for default judgment on his ADA claims against the medical defendants, (2) a Rule 35(a) discovery motion asking the magistrate judge to order physical examinations of him by outside providers, and (3) a motion to supplement his complaint to add allegations that prison physicians had once again refused to prescribe strong narcotics for him. We review all three orders for an abuse of discretion. *See Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244 (11th Cir. 2015) (motion for default judgment); *Harrison v. Culliver*, 746 F.3d 1288, 1297 (11th Cir. 2014) (discovery motion); *Schwarz v. City of Treasure Island,* 544 F.3d 1201, 1229 (11th Cir. 2008) (motion to supplement pleadings).

---

³ Brennan purports to incorporate his claims against most of the remaining defendants (the Commissioner and Deputy Commissioner of the Alabama Department of Corrections, the Warden and Deputy Warden of Draper prison, two correctional officers, and a nurse practitioner) from his complaint and an unspecified responsive pleading filed in the district court, but he does not make any argument or cite any authority challenging the magistrate judge's analysis or conclusions on those claims. Simply naming the defendants and referencing his claims against them is insufficient to raise any issue on appeal. "[A]n appellant's simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes our considering the issue on appeal." *Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009).

A.

When a defendant fails to plead or otherwise defend a case, the court may enter a judgment of default. Fed. R. Civ. P. 55(a); *see Surtain*, 789 F.3d at 1244–45. The entry of a default judgment should be reserved for "extreme circumstances," however, and courts "must respect the usual preference that cases be heard on the merits." *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1317 (11th Cir. 2002) (citation and punctuation omitted).

Here, the magistrate judge did not abuse its discretion in denying Brennan's motion for default judgment. The defendants responded to Brennan's complaint by removing the lawsuit to federal court and filing answers and/or responsive reports as directed by the magistrate judge. Although the defendants initially failed to address Brennan's ADA claims in their responsive pleadings, such partial omission is not the complete failure to respond to a complaint that is contemplated in Rule 55, and the short delay in responding to some of Brennan's claims did not cause any prejudice to him. *See id*.

B.

Rule 35(a)(1) provides that the district court "may order a party whose mental or physical condition—including blood group—is in controversy to submit

7

to a physical or mental examination by a suitably licensed or certified examiner." In ruling on a Rule 35 motion, the district court must first determine whether the movant has made an adequate showing on the "in controversy" and "good cause" requirements. *Schlagenhauf v. Holder*, 379 U.S. 104, 118–19 (1964). These requirements "are not met by mere conclusory allegations of the pleadings—nor by mere relevance to the case—but require an affirmative showing by the movant." *Id.* at 118.

Brennan asked the magistrate judge to order him sent to the local Social Security field office for a disability determination and to an independent pain management specialist for a "definitive" determination of the appropriate treatment for his chronic pain. The magistrate judge did not abuse its discretion in denying his Rule 35 motion because he failed to show good cause for the examinations that he requested. He had already been examined by multiple physicians, including the two outside specialists who evaluated him after his back injury. His medical records, including recent CT and MRI imaging, were available to him upon service of a discovery request. He was given the opportunity to conduct depositions by written questions of any of his current or former treating physicians—at least three of whom had prescribed what Brennan contended was the appropriate treatment for his chronic pain—and could have elicited testimony from them about his medical

8

condition (including whether he was disabled within the meaning of the ADA)[4] and the appropriate treatment for it.  In short, Brennan made no showing that a Social Security disability evaluation or an evaluation by a pain management specialist would add anything to the information already available to him.  *See Schlagenhauf,* 379 U.S. at 118 ("The ability of the movant to obtain the desired information by other means is also relevant" to the decision whether to grant a motion for physical examination under Rule 35.).

C.

Federal Rule of Civil Procedure 15(d) provides that a district court "may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."  Brennan sought to supplement his complaint to add allegations that prison physicians had once again decided to wean him off his preferred pain medication—this time Tylenol 3, which contains codeine.  The documents filed with Brennan's motion to supplement showed that the treatment decision he complained about was very recent, and Brennan had just filed grievances with the prison about the medication change.  Given that the facts underlying Brennan's

---

[4] A Social Security disability determination would not have been dispositive on the question of whether Brennan was disabled within the meaning of the ADA.  *See Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 (7th Cir. 1996); *Robinson v. Neodata Serv., Inc.*, 94 F.3d 499, 502 n.2 (8th Cir. 1996).

new allegations were still evolving, we cannot say that the magistrate judge "made a clear error of judgment" or "applied the wrong legal standard" in denying Brennan's motion to supplement. *Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc.*, 420 F.3d 1317, 1325 (11th Cir. 2005).

### III.

This Court reviews a ruling on a summary judgment motion *de novo*, viewing all evidence and factual inferences in the light most favorable to the nonmoving party. *Melton v. Abston*, 841 F.3d 1207, 1219 (11th Cir. 2016). Summary judgment is appropriate if the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). To survive a summary judgment motion, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). He must make a sufficient showing on each essential element of his claims. *Celotex*, 477 U.S. at 322–23.

### A.

The essential elements of a 42 U.S.C. § 1983 claim are: (1) the violation of a constitutional right or federal statute; and (2) that the violation was committed by a person acting under color of state law. 42 U.S.C. § 1983; *Melton*, 841 F.3d at

1220.  "[T]he medical treatment of prison inmates by prison physicians is state action" within the meaning of § 1983, regardless of whether the provider is employed by the state directly or by contract.  *West v. Atkins*, 487 U.S. 42, 54–56 (1988).  The defendants here do not dispute that they qualified as state actors within the meaning of § 1983, and so we proceed to evaluate Brennan's claim that Corizon and its employees violated his constitutional rights.

The Eighth Amendment's prohibition of "cruel and unusual punishments" governs "the treatment a prisoner receives in prison and the conditions under which he is confined." *Helling v. McKinney*, 509 U.S. 25, 31 (1993).  The Amendment imposes an affirmative obligation to provide prison inmates with medical treatment.  *Estelle v. Gamble*, 429 U.S 97, 103–04 (1976).  A prison official's "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Id.* at 104 (internal citation omitted).

To prevail on a § 1983 claim for such a violation, a prisoner "must show: (1) a serious medical need; (2) a defendant's deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Melton*, 841 F.3d at 1220.  These elements encompass both objective and subjective components—there must be "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need,

and an actual inference of required action from those facts." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000). Here, Brennan failed to present evidence supporting the first two elements of his § 1983 claim.

"A serious medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009) (citation omitted). A medical need may also be considered serious if a delay in treatment worsens the patient's condition. *Id.* "In either case, 'the medical need must be one that, if left unattended, poses a substantial risk of serious harm.'" *Id.*

"Severe pain that is not promptly or adequately treated can also constitute a serious medical need depending on the circumstances." *Melton*, 841 F.3d at 1222. But a plaintiff's statement that he experienced some pain or discomfort is not enough; the prisoner's pain must be objectively so severe that the failure to treat it deprives him "of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). For example, this Court has held that the deliberate failure to obtain medical treatment for broken bones or equally painful or progressive conditions can violate the constitution. *See Melton*, 841 F.3d at 1222 (obviously broken arm); *McElligott v. Foley*, 182 F.3d 1248, 1257 (11th Cir. 1999) (terminal cancer evidenced by severe abdominal pain and significant weight

loss); *Brown v. Hughes*, 894 F.2d 1533, 1538 (11th Cir. 1990) (broken and swelling foot).

To show "deliberate indifference," a prisoner must show that the defendant actually knew that the inmate was at risk of serious harm if he did not receive medical treatment, but unreasonably—and at least recklessly—delayed, failed to provide, or refused to provide medical treatment. *McElligott*, 182 F.3d at 1255. A showing of negligence or medical malpractice in the diagnosis or treatment of a prisoner's medical condition is not enough to meet this standard. *Estelle*, 429 U.S. at 105–06. Instead, when the alleged constitutional violation is the withholding of medical care, "there must be a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish." *Taylor*, 221 F.3d at 1257.

"Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994) (internal citation omitted). But "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id.* at 838.

Even viewed in the light most favorable to Brennan, the evidence here does not support Brennan's claim that the medical defendants intentionally disregarded a serious medical need.  First, he failed to show that Dr. Lampley-Copeland knew that he was at risk of serious harm if she did not immediately prescribe narcotics for his chronic pain.  There was no evidence of an objectively serious medical need—according to the available records, Brennan was able to stand, sit, and walk without obvious difficulty even when he was given no pain medication at all.  Furthermore, Brennan's own affidavit testimony states that, after reviewing his medical chart and imaging, Dr. Lampley-Copeland did not believe that his medical condition was serious.  The medical records and Dr. Lampley-Copeland's affidavit testimony further establish that it was her medical opinion that treatment with narcotic pain medication was not appropriate for Brennan, at least not on a long-term basis.

And although Brennan complained of withdrawal symptoms, there is no evidence that anyone else observed any sign of discomfort related to withdrawal.  Nor is there any evidence that cutting off Brennan's narcotic medication "cold turkey," waiting for nine days, and then prescribing a less potent narcotic temporarily (as Dr. Lampley-Copeland did) was an intentional deprivation intended to punish Brennan.  As we have said before, "'a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's

diagnosis or course of treatment' does not support a claim of deliberate indifference." *Melton*, 841 F.3d at 1224 (citation omitted).

Brennan's § 1983 claims against the other Corizon defendants (Corizon, LLC; two former officers of the company; and the Corizon health services administrator for the prison clinic) are derivative of his claims against Dr. Lampley-Copeland. Even if the named defendants have supervisory authority over Dr. Lampley-Copeland's medical decisions, they cannot be held vicariously liable under § 1983 for her actions. *See Goebert v. Lee County*, 510 F3d. 1312, 1331 (11th Cir. 2007). Instead, Brennan must show that they (1) were directly involved in unlawful conduct, (2) implemented a custom or policy that resulted in a constitutional violation, (3) instructed Dr. Lampley-Copeland to commit a constitutional violation, or (4) knew that Dr. Lampley-Copeland would violate his constitutional rights and failed to prevent it. *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014). Similarly, because Corizon, LLC was performing a "function traditionally within the exclusive prerogative of the state" in providing prison medical services, Brennan must show that Corizon had a custom or policy that caused a constitutional deprivation in order to satisfy the element of causation for his § 1983 claim. *See Buckner v. Toro*, 116 F.3d 450, 453 (11th Cir. 1997). But the evidence showed only that one or more of the Corizon defendants was aware that Dr. Lampley-Copeland refused to prescribe strong narcotics for his

15

chronic pain.  Again, a dispute over the adequacy of medication prescribed by a treating physician generally does not amount to a constitutional claim.  *See Melton*, 841 F.3d at 1224; *Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1575 (11th Cir. 1985).

Because the evidence does not support Brennan's claim that his constitutional rights were violated, the magistrate judge did not err in granting the defendants' motion for summary judgment on his § 1983 claim.[5]

B.

Title II of the ADA, 42 U.S.C. § 12131 *et seq.*, provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  The ADA creates a private cause of action for money damages against a public entity that violates its provisions.  *See* 42 U.S.C. § 12133; *United States v. Georgia*, 546 U.S. 151, 154 (2006).  State prisons qualify as public entities under the ADA.  *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998).  Individuals and private entities, however, are not subject to liability under Title II of the ADA.  *See Edison v. Douberly*, 604 F.3d 1307, 1308 (11th Cir. 2010).

---

[5] The magistrate judge also found that several of the individual defendants, including three medical providers employed by Corizon, were entitled to qualified immunity.  Because we hold that summary judgment was appropriate on other grounds, we need not consider whether the privately employed medical providers were entitled to qualified immunity.  *See Rowe v. Schreiber*, 139 F.3d 1381, 1382 n.2 (11th Cir. 1998) ("We may affirm a decision on any adequate grounds.").

16

On appeal, Brennan makes only one ADA argument: that Dr. Lampley-Copeland and Sagers-Copeland refused to issue him a "no work" profile even though they knew that he was being required to do work beyond his capabilities. Construing this argument broadly, we interpret it to mean that Dr. Lampley-Copeland and Sagers-Copeland discriminated against him by failing to make reasonable accommodation for his disability. Pretermitting the questions whether Brennan was disabled within the meaning of the ADA and whether the "no work" profile he sought was a reasonable accommodation, the magistrate judge correctly granted summary judgment to Dr. Lampley-Copeland and Sagers-Copeland because they are not "public entities," and therefore are not subject to liability under Title II of the ADA. *Edison*, 604 F.3d at 1308.

Because the evidence did not support Brennan's claim that the defendants were deliberately indifferent to a serious medical need, the magistrate judge correctly granted summary judgment on his 42 U.S.C. § 1983 claim. The magistrate judge also appropriately granted the individual defendants' motion for summary judgment on Brennan's ADA claim, because as individuals they are not subject to suit under Title II. And for the reasons stated above, the magistrate judge did not abuse its discretion in denying Brennan's motions for default judgment, for an independent medical examination, and to supplement his complaint. Accordingly, we affirm.

**AFFIRMED**.